This is the Town of Nags Head v. Matthew Toloczko. Uh, Mr. Bremer. Is it Toloczko? Yes. Okay. Thank you, Mr. Bremer. May it please the court. My name is David Bremer for the appellant in this matter. The honor is the primary issues in this appeal or whether the criteria for Burford abstention apply to each of the Toloczko's federal and state law claims arising from the town's home removal order and whether their federal takings claim was wrongly dismissed as unright. I'd like to focus at the outlet on the improper application of Burford to the procedural due process and equal protection claims. And then I'll turn to the state law claim that the town lacks authority to remove the homes and the federal takings claim. The district court was wrong to abstain on the procedural due process in equal protection claim because these claims simply don't rest on a finding of a violation of state law or in fact on any interpretation of state law at all. They are simply seeking to have a court hold that the town must apply its rules and policies in an equal fashion with proper process, regardless of what the nature of those policies are, regardless of whether they're incorrect or under or correct under state law. And if I may jump ahead a little bit, let's assume hypothetically that we agree with you as to one or more claims. And so we end up with litigation in state court and litigation in federal court. Is that any way to run a railroad? Is that a desirable outcome? Well, first off, I wouldn't assume that that's going to be the outcome. Well, I'm asking you to assume that. Okay. I'm asking you to assume that you persuade us that there is one or more, but not all, of these claims. There shouldn't be a, there shouldn't be abstention. I understand. And so I'm asking you to look into the future and what do you say about that? That is the nature of federal jurisdiction. There's no rule that allows you to package all claims and send them to state court because it's more convenient. And they're here on diversity jurisdiction. The purpose of diversity jurisdiction is to allow federal forum. And I would say as a practical matter, though, what normally happens in those circumstances is that there's a stay issued if there's two in one of the courts. Exactly. That's exactly my point. And you, anyway. So which one, which one would you rather have stayed? Well, we're trying to get in the federal court because we're on diversity jurisdiction. So if some of the claims, I think what you're getting at is some of the claims remain in the district court, but some are dismissed. Yeah. Now the Telascos have the option to raise those dismissed claims in state court. They don't have to, but they have the claims in the federal court and they can litigate that. And then it will be a matter of where you want to be. But that isn't the essential question for Burford. For Burford, the essential question is simply whether the standards apply to allow. Do you have a concern about issue preclusion? Or, I mean, have you thought, I mean, you don't have to tell me what you've thought about, but, but. If, if there was, you're suggesting if there was another action later on, would there be issue preclusion based on that? Absolutely there would be issue preclusion. The question is, are you concerned about that? Have you? Right now? Yeah. No, we're not concerned about it. We're just trying to get back into federal court. We're just trying to have some litigation on the merits of our claims. So we've got some pretty significant constitutional violations here and we want to get into the federal court. But isn't your ultimate constitutional violation, or maybe penultimate, a takings claim? Well that is. I mean, isn't that what you have? Well that is, that, that's an important claim, but we also were denied a hearing before or after they ordered the homes removed, gave us no chance to cure, denied all permits, imposed fines, and so you have a pretty significant... I see, so your theory is that, that you have a takings claim and ultimately, if you're successful, town's gonna pay you, pay your clients a chunk of money, but you're also going to get damages for denial of due process and you see this, you're gonna have, and I don't mean this pejoratively, but you're gonna have sort of a double recovery. Well, not exactly. You're gonna get the value, whatever it is, of your client's property, but then you're gonna get these other damages as well. But they're different. And I guess attorneys fees as well. Well, they're different injuries. A due process injury is not a takings injury. The point is, he's best prefacing his question. He understands that. You didn't ask his question. He said you're looking to recover for damages for different theories, but a bunch of different damages. And your answer would be? Just compensation is... Is that yes or no? No. You know, that's not what we're seeking. We're not seeking damages. You're not seeking money. We are, on the procedure due process claim, we are seeking declaratory relief, injunctive relief, and damages. Section 1983 damages, which is... That's not bad. And the just compensation claim, the takings claim, it's the fair market value for the property. But you have to transfer your property to the government. In a due process situation, you don't have to do that. What have we said that you would think we don't understand that? Excuse me? What have we said that would make you think that you understand that, but that we don't understand that? I'm not sure. The point is, you're trying to get two different pots of money. Is that correct? Two different pots of money for two different injuries. I didn't ask you that last part. Let's try it again. Just answer my question. This is all coming off of Judge Davis's question. You want to get two different pots of money. No, I wouldn't. I wouldn't put it that way. I didn't ask you to put it that way. I've put it that way. Okay. I've asked you to answer my question. You don't want two different pots of money? No. We're not asking... Which pot do you want to give up? We're not asking for two different pots of money. Which pot do you want to give up? Money for your property or money for your constitutional violation? Which one you want to give up? We're... We are... If we lose on one claim, we're going to give up one. We don't know how it's going to turn out. I said, which do you want? Well, of course, we don't want to give up either option. That's why we're... Why do you find it so hard to say you want two pots of money? We have lawyers coming in here every day saying that. They want three and four pots of money. If we want two pots of money for two different claims, if that's... Why do you think that's so damaging for you to say that? I don't. I'm just trying... Why are you clients here? We want... We want... They probably want to know. They probably want two pots of money. We want two different pots of money. Sure. But what I was trying to convey to the question was that that they're not pots of money for the same claim. We know that. And the injuries. Okay. That was in his question. He said the taking and then the procedural problem or the 1983 problem. Maybe you don't understand the question. That's exactly what he asked. But at any rate, I'll let you go on with your argument. The argument on the procedure due process claim is that we're seeking damages for the denial of a hearing before or after the issuance of the removal order. Let me ask the fact question. It's not clear to me. And we sort of said this in the question. Do your clients want money? Just compensation for that taking? Or do they actually want their beach house? Is that clear from the record? Well, they want... The primary goal is to keep their beach house. That's what I said. That beach house had been in the family. They would like to have that beach house. But if they can't have it, then they want somebody to pay them something for taking it from them. That's correct. But they'd also like to have, if the government comes along and says, as they did here, you have to abandon your property. You have to... You can't get any permits to repair your property. And you have to remove it in 15 days. Or we might go out and do it ourselves. They've been deprived of their property interests right at that time. And they would like a these determinations. No, but I wouldn't ask. I was just asking the simple question. Did they really want money for the property? Or do they really want the property? That's not a legal question. I was just asking. And you're correct. It's that they, of course, they prefer to save the property. Because they have some attachment to a cottage at the beach. Right. And if they won on the procedure due process claim, that would allow them to keep the cottage. But if they didn't win on the procedure due process claim... Don't almost all of this turn on land use regulations and what the state can and can't do on that, on what is and is not called the beach. No, I don't think it turns on that all. The due process and equal protection claims, for instance, don't turn on any issue of state law. Whether or not they interpreted the town, I mean, interpreted their ordinances correctly or not, the town has still have to apply them fairly and evenly. So if we won, say, for instance, on the due process equal protection claim, they wouldn't have to change their policies at all. They wouldn't have, the state wouldn't have to change its rules at all. Well, you say they have to do it fairly evenly. Is that equal protection? Well, I'm sorry, it's a little bit imprecise. They'd have to do it with a hearing proper process and in a non-discriminatory fashion. But my point is that... Because they have it after the fact even now. If in fact, I'm just asking, if in fact that beach cottage cannot be there under state law, could they have a hearing after it's torn down for purposes of due process, hearing, fair hearing requirements? No, I don't think the Constitution, that would be sufficient. You need a pre-deprivation hearing prior to the deprivation of any property interest that's more de minimis. And here you've got a significant property interest in the home, the right to rent, the right to use, the right to market, the value in the home, and all those things were lost at the time the order was issued. Now remember, this wasn't a normal... What would the value be, what would the value be if in fact, except my hypothetical, the home was clearly on public trust property and it could not be there? It could not be there. It can't be there, you can't rent there, you can't enjoy it, you can't use it. It's in violation of the law. If that's true, then if you get a, what's the difference in value to your clients between pre- and post-deprivation hearing then? Well, you'd still have a loss of all value. And those are things that we would get into in the judicial court, but we're just trying right now to be... But what if the house is in an illegal location? You're entitled to money for that? Well, you're entitled to, you're at least entitled to hearing before they come along and tell you that it's an illegal location. What's the difference between, under my hypothetical, it's clearly improper and illegal for it to be there. I'm not saying that's the fact in this case. And what's the difference then in any measure of damages between a post- and pre-deprivation hearing? If the same fact is going to come out in both hearings, and in both hearings it's going to be clearly established that it's illegal for someone to have that property on the beach, what's the difference? Well, I don't know if there'd be a big difference in damages, except for the damages that might occur from the delay in having an empty home sitting there and having to deal with that during that time. But they're not just seeking damages. But you wouldn't have to deal with it. It's there illegally. They don't want you to deal with it. Well, we would like to be able to talk to them and have a hearing, as the Constitution requires, to challenge the factual determination. If we were able to do that, you might have any damages during that period. That's the purpose of a hearing, is to avoid an erroneous deprivation prior to the deprivation. And here, you wouldn't have it either way, before they tear it down or before they issue the order. This wasn't a normal nuisance order. I think you best argue it on the equal protection claim. Why wasn't the court right to abstain there on equal protection? I just focused on that a little bit. I focused on that myself. I want you to talk about it. Okay. It's for the same reason as the due This equal protection claim doesn't hinge on any finding of a violation of state law. It doesn't hinge on the interpretation of the town's ordinances. It takes those ordinances at face value and says, fine, these are your ordinances, and you can apply them, but you have to apply them in a manner that's non-discriminatory. And so there's no reason for a court, a district court, to get into... But who is similarly situated under state law to you? Fourteen other... They're similarly situated under the town's ordinances, the fourteen other people that the town can see... But does the mean high water, high tide mark mean anything in your assessment of whether or not you can and cannot be, where you're located? It means a lot under state law. Where is there any information that the mean high water mark is the same for each one of those properties? There isn't any in the record, and that's the problem with what is going on here, is that it doesn't matter... No, no, no, but you have to assert, don't you have to assert that others in similar situations are being treated differently? Right, and we're dealing with a town ordinance that defines the public trust to go to the vegetation line, not the mean high tide line. Well, here's the thing, then, is the vegetation line, is the vegetation line the same to each one of those cottages? That is the case. That's right. The town can see... How do we know that? Because the town concedes it. It concedes that those fourteen other homes are wholly or partly in front of the vegetation line, and that they're the same as ours. And so if that's the case, then you've got, under the ordinance, we're situated similarly with the application of the ordinance. On its face, it says that we consider you a nuisance if you're on public trust property. But no, it's made by their, if they concede that they're all seaward of the vegetation line and that's their definition, I think that does make out similarly situated. Yeah, and I'll let them speak for themselves. I don't know if they concede that all of them are, but they have conceded that at least some of them are wholly in front of the vegetation line as they claim ours are. Was your equal protection claim, was that styled as a declaratory judgment? I think it was declaratory, yes, plus damages under section 1983 in that claim as well. And so, I guess we'd be seeking another pot of money under the equal protection claim, but for an entirely different injury than either the takings claim or the due process claim. Didn't the court decline to grant declaratory relief to you? The court declined to grant declaratory and damages. So how would we review that? Well, you would review it under the Burford, this basic application of Burford. We have a big deal with Burford. No, no, in the alternative, didn't he decline relief? It's not Burford. He declined, but you can't just decline, you can't, there was an error then, a legal error on the part of the court. He can't just decline to not exercise jurisdiction over. In the alternative, he exercised jurisdiction. I thought you said he declined to give you declaratory relief. In the alternative. Right, he declined to give us declaratory relief. It appeared to me that the basis for declining to do that was because he believed that it was a state law question. And so, what I'm saying is that that's not the proper way to analyze it. That would have to do with abstention. That's what he talked about, but I thought he, in the alternative, declined to give you declaratory relief. Well, and he did, and if you're reading it. We would review that for what, abuse of discretion? No, I believe you would be reviewing that under the application of Burford, which he said he was applying. No, you would not. No, no, no. I don't want to blame it anymore. But he said he was going to abstain, but if he didn't, in the alternative, he declined your request for relief. That's how I read it. And I guess that it would be, if abuse of discretion was the standard for that one line, then I guess the argument would be that he's got to explain what he, what is he declining, why? What is he saying? Mr. Brinker, with respect to abstention, what's your best argument that abstention doesn't apply here? Overarching this entire case, the second one we're going to hear is this issue of the application of the public trust doctrine, which at the time, at least with respect to this case, appeared to be unsettled law, but it's no longer unsettled. It's clear, based on two court of appeals opinions from North Carolina, that the town had no authority to enforce its ordinance, and doesn't that resolve this thorny issue and allow the court then to consider the claims on its merits? Well, certainly on that, on the lack of town authority claim, the Cherry decision is settled state law, so there's no, there's nothing for the court to do that would interfere with the state law and policy in that area. So there's no basis for abstaining on that. And it's the same with respect to the due process and equal protection claims. The scope of the public trust under state law or the town's view, it doesn't matter when you're talking about whether you provide a hearing or whether you apply your ordinance evenly. It doesn't make a difference. But if the town couldn't apply its ordinance at all because it was a state prerogative, I mean, that's a fairly easy issue for the federal court to resolve on its merits. And that's exactly what we're trying to get to, is the merits on all those claims. So I would agree with you on that. My point is that many of these claims don't hinge or rest on any problem. You've reserved some time. All right, thank you. Thank you very much. Mr. Thompson. Good morning. I'm Everett Thompson from Elizabeth City. I'm here with my law partner, David Perez. We represent the town of Nags Head. And I think maybe it might be helpful if I just reviewed a little bit about the facts of this house. This house was built in the 70s by the Telosco's parents. And at the time it was built, it was well back from the ocean. There was a sand dunes. There was seals growing out there. There was steps going over the sand dunes. And as time went along, as has happened on the Outer Banks for the last few hundred years, the ocean comes westwardly, and the shore migrates westwardly. Many of those old Nags Head— We'll be in Charlotte soon. Judge Diaz will have oceanfront property. Yeah, beachfront property. And even those old Nags Head cottages that are in Nags Head that have been there since the 20s and 30s, they've been moved two or three times. So what's happened is, as time went along in the late 90s and in the 2000s, again and again what happened was erosion took this house, or took part of this house, took out the septic tank, took out the steps, and they got them fixed, and they got new septic tanks and all that sort of stuff. But in November of 2009 was sort of the linchpin. I mean, there was a number of houses out there on the beach, and a number of them are still there, that had just gotten to the point where the town had to do something about it, declared a nuisance. Now, if you look at the complaint that we filed in state court in Derrick County, we asked for several alternative forms of relief. We didn't just ask that the house be demolished and removed. We also asked that the nuisance be abated and that the house be repaired. Do you think that North Carolina law now makes it clear that the town has no authority to invoke any remedies for people violating the public trust lands? I think you're right. I think it does. But I think the Cherry decision also said that the town has a right to enforce its nuisance statute, and not based on location, but based on the condition of the house. The town does have a right, I think, in all municipalities on the coast of North Carolina, would have a right to enforce a nuisance ordinance if a property became dangerous to the public, if it was in danger of falling down, if the sewer, if the septic tank was open on the beach. But why is that an unsettled question of state law, then, that would require abstention? Well, I... Nothing that special about, not to denigrate practice or anything, nothing special about applying a nuisance ordinance, is there? Not really, but applying the nuisance ordinance does have a profound effect on the coast of North Carolina. Probably does, but a federal court can look at the way you apply it just as easily as a state court, can't they? It can. It can. So then, what basis is for abstention? Well, I look at the Pampanio case that said that this court said that the district courts of this district should not be going into land use cases, should abstain from those cases because of the effect that they have on state, I mean, and local government. That was almost a blanket... What land use issue is now at play? It was a whole question about ownership of the beach and access to the beach, and who can do what on the beach. That's right. But that, you say that's now settled. I think it is. At least to the extent that towns cannot enforce any state rights or people's rights over that beach property. I don't think the town, you're right, I don't think the town can declare that house to be a cause of where it is. And so what's the complicated land use planning issue that we should leave up to the state court? Well, I think it deals with the issues of what the towns can do with regards to nuisance ordinances, and I think that this court in the past has been hands-off to land use issues with municipalities and counties, and that's... So you think if it can be called a land use planning issue, federal courts can't handle it? No, I didn't say they couldn't, but I'm just reading the cases that have come down... Shouldn't. ...should abstain, because as Justice Marshall said, it was quoted in one of the cases, this is one of the most important things local governments do, is land use. And I want to point out, to be honest, that this case is dynamic in the sense that things have changed. In 2011... Can I ask you a question? Yes, sir. My general edification. However you define the beaches in North Carolina, vegetation, a high water, average high water mark, are beaches in North Carolina public? Yes. Okay. I know they are in South Carolina. I just wanted to ask that question. Yep, you can... As I pointed out in my brief, you can walk from Virginia to South Carolina on the beach, and you shouldn't be impeded by that. Come on down. I do sometimes. I think I lost my train of thought there for a second. So what do you want us to do here? Well, I was... In light of the legal landscape that's now before us, what do you want us to do? I don't want the federal court to decide this case. Okay. Why not? Well, for one reason, we filed this case in Dare County. Right. All right. And this is a land use issue, and it should be decided by the state courts. That's our position. You know that federal courts have an obligation to exercise the jurisdiction that Congress has given us. Absolutely. All right. And we got equal protection claims here and due process claims. Why can't federal courts go ahead and adjudicate those claims? Well, they could, but... And why shouldn't they? Why shouldn't this court, this district court? Well, let me answer that two ways. One is I think this court has in the past said that they were going to abstain from land use issues. Okay. What's your second reason? Well, I think all these other constitutional claims are just wrapped into the land use issues. But they're constitutional claims. Well, they are, but as Judge Devers said, they're just put in the clothing of constitutional claims. Well, no, he's looking for pots of money here. Of course he is. Okay. So they're clothed in the Constitution. Well, in that sense, they are, but they're based upon the land use issue and the nuisance issue. But what's happened is because the town of Nags Head spent over $30 million in a beach nourishment program, they've added 200 feet of sand in front of the Telosco's cottage. It's not... They're generous to the town to do that. Well, they tax folks put stuff like that, but yeah. And it was. I mean, it's a great asset to anybody that has oceanfront property. How many more times are they going to do that, by the way? Well, I've been on the Outer Banks for over 60 years, and I'm going to tell you, they're going to have to do it again. We know they're going to have to do it more frequently, too, aren't they? Probably, yeah. So O'Island's going to be underwater in a few years, unfortunately. Well, it's moving westerly, yeah. All right. So if the case is in federal court, then what's going to happen? Well, I guess the issue is going to be damages if it is in federal court. And what are the damages? Are you going to bring an enforcement action as a counterclaim? Have you done that already? That's what our complaint... Our complaint asks that the nuisance be abated, and that's simply what we ask. But what's happened since we've done the nourishment, we've taken it out of the... This is before the Cherry case. But we said, you can leave your house where it is. It's not an impediment to pedestrians or emergency vehicles. Fix your house. Knock yourself out. Fix your house. And to do that, first thing the Telascos have to do is they have to get a permit from the Health Department, which is not Town and Ag's head. It's their county. And they've gotten that. They've gotten a permit from the Health Department. They got it in May of 2011. So they could hire a contractor this afternoon? No. No? Not yet. What else is needed? The Health Department permit is conditioned upon a CAMA permit, which is the Coastal Area Management Act. And they control all the land that's next to water in North Carolina, wetlands, that sort of thing. So they've applied to CAMA, the Telascos have. They didn't apply to CAMA until almost two years after their house was damaged by the CAMA turned them down. But they've appealed, and they're in the process of that appeal. Until that goes through, then they can apply to the Town and Ag's head for their repair permits, which presumably they would get, assuming they do it properly. So we're not taking anything from them. Their house is still there. As we stand here today, that house is on the beach. And they're welcome to fix it. But they can't use it until they fix it. Well, they've got to go through the steps, and they haven't done that. No, I understand. We haven't told them they can't use it. I thought you, there's no order prohibiting them from- No court order prohibiting them from doing anything. Our lawsuit was filed in Derrick County saying, we want a court order to tell them to abate the nuisance. Why haven't you gotten that court order? Because it got in this court. It got into the Fourth Circuit. It got into the Houston District Court with Judge Dever. Now, I do want to point out to you, a month ago, the Telascos filed a state court action and used all the counterclaims they have in this case as their complaint in state court. And that case is pending in state court right now. What's that about? Same case. Same case. It's all their counterclaims have now been- Because the district court said you need to go to state court. Well- I mean, that's why- Ask them why they did it, but I presume that's what it was. We simply view this as a land use issue, and this court's traditionally and historically- But you're not displeased because you want the state- Your argument is the district court was right to send all this back to state court, including their counterclaims and everything else. Those counterclaims you tell us are now represented as claims in the new lawsuit. And is it Derrick County? Yes, sir. That's what you wanted. Yes, sir. We're fine with that. You're happy to have them there. We want to get it over with. That's what a judge told me one time in the trial school. Get it over with. We don't ever say that, but I think sometimes we feel that way. That's really all I have, and the rest is in our briefing. We just think that Judge Debra was- Let me ask this. It sort of appears to be that this nuisance statute is being used for land use planning purposes. Is that what's going on? Well- I mean, y'all don't- This to me, like maybe the town doesn't want those beach colleges to be there. Well, they don't- They'd rather have them gone. They do. They do. And so, if you can't zone it, whatever, find some way to get rid of it. Is that what's going on? Well, the reason they're there is because of the erosion. It's not anything the town caused, but now they're on the beach. No, the reason they're there is they were built there. Now erosion is taking the beach in front of them away. Granted, they were built legally at the time the character of the land has changed. It's now beach. And it's your position that if they could get the permits and fix it back, the city would be completely happy with that. We'd be fine with that. Put it back on the tax roll. By the way, that's the first thing you said that really drives me. They want it back on the tax roll. That does make sense. They probably taxed pretty heavily. But I'm not saying everything you did say made sense. I was trying to figure out what the city's doing. Not everything, maybe. But I was trying to figure out what the city's doing. I thought maybe the city thought it was an eyesore. And just a beach is a lot prettier for tourists to come to than the eyesore. But you say the city would be happy if they rebuilt it with the permits and tax them. But they're fine with that, and they've told them that. Is that because the beach has been re-nourished, so it's now no beach out in front? It is. It is. Absolutely. And is the problem with the coastal area management folks something the town said? No. No? Is the town supporting their application? Well, the town took the position that having them get a septic permit and rehab that house wasn't part of their overall plan, if I can use that term, and weren't real happy about it. But they don't make the decision. CAMA makes the decision. And I'll tell you this. What I think's going to happen, and I can't predict the future, but what I think's going to happen is they're going to get a CAMA permit. Because of the rules of CAMA allowing you to come back and fix something that was already there. Now, if you started from scratch, they wouldn't let you go out there and put a house— It's like rebuilding the footprint or something like that. That's right. If it hadn't been destroyed by so much percentage, they'll let you go back and do it. And I think that's what's going to happen. And they're going to—and they get the permit. They get the permit. They get their house fixed. They rent it. They do what they need to do. Does the record in any way reflect that CAMA's ever granted a permit when the town involved opposed it? See, I— I'm sure they have, but I don't know that— I get the feeling. I get the feeling that the beach property owners feel they're getting sort of double-teamed or tag-teamed on this. That they just want to have their house there. The city tries to enforce—the town tries to enforce the North Carolina law on beaches. Well, now you say you can't do that. So now you're using the nuisance statute to do it. And now that the property—the sand has been renourished, well, you've got to get a coastal permit. But we've told the coastal permit we're not really happy with it. It sort of looks like it's kind of a conglomeration of some people—by the way, this is a discussion that's going on everywhere that I can tell everywhere on the coast in this country. What do you have at the coast and what don't you have? Do you revert back and move houses way back off the beach, or do you allow people to continue to be right on the beach? That's just a public policy question. But the other side, I think, sees this—and I want to see if you think that I read this incorrectly—all of these things that are being thrown at them, it's just a way to get them the heck off that property. Is that not what's going on in this case? No, not exactly. And what I want to say is that initially the letters that came from the town told them they needed to move the house. When we filed the lawsuit asking for court approval or court orders, it was alternatively. It was rehab, fix your house, or remove it. Now, because of beach nourishment, it changed the character. Those houses, as originally, before nourishment, they did impede traffic. They'd impede pedestrian traffic, emergency vehicles, lifeguards, all those folks. It was a concern, absolutely a concern. But with nourishment, that's not a problem. And obviously, we can't enforce it anyway because it's a public trust. Thank you for your time. Thank you very much. Mr. Bramer. May it please the Court. Those are all—I heard a lot of interesting factual allegations. I disagree with a lot of them, but those aren't really what is at issue in this court. The issue is abstention. From what I heard from opposing counsel is that he's relying on a land use argument, that we have land use here. I'd just like to point out that in Pompeano, that in that case, it wasn't just that it was land use. It was that the claims of the property owner hinged on a finding of a violation of unsettled state law about how many developments they write and whether the government there had applied the subdivision regulations correctly. But our claims aren't like that. Our claims are entirely different. You don't have to look at regulations and define them and decide where the public trust goes in North Carolina to determine an equal protection claim. You don't have to do that for a procedural due process claim. You may have to do that for a takings claim, but that's inherent in takings argument because the definition of property is part of every taking. Nor shall private property be taken for public use, as you know. I'd like to go to the federal takings claim real quick. That claim wasn't abstained on. That claim was dismissed for lack of rightness on the ground that we hadn't litigated an inverse condemnation action first before litigating the federal takings claim. But the only reason we didn't litigate the inverse condemnation first was because the court stayed that claim. So the court, in effect, deripened our claim and then dismissed it, and now we have no forum for that federal takings claim. We can't raise it back in the state court because you have to raise it together with an inverse condemnation claim under San Remo. But we can't raise it in the federal court because that court holds that it's not right there because we didn't litigate the inverse condemnation claim that stayed. So the federal takings claim needs to go back with the inverse condemnation claim. They need to stay together. The inverse condemnation claim is in the federal court. And that's where the—otherwise, we're deprived wholly of a forum for our federal takings claim, which is, I think you mentioned, is a substantial claim that we can discuss where the public trust goes. But if we're right, they've taken our land and our home. When does your federal takings claim—when does the statute start running on that? It's unclear. There's some precedent that suggests it starts to run when you have the actual—the invasion that you're complaining about. But there's other precedent that suggests it would run later. It would start later. So I'm not exactly sure. I know that that's a potential problem, though, under some of this court's precedent, that we—that we'll be gone without any forum because we did everything right. We're allowed to bring in a federal takings claim with an inverse condemnation claim. What would happen if—what would happen if any claim stayed in state court, and then you go through the inverse condemnation proceeding in state court to find some fair market value for your property, correct? If that occurred. That's what you do, isn't it? Well— An inverse condemnation—that's like an eminent domain case, isn't it? Where you ask for the court to decide the fair market value of your property. Yes, it's a state law takings claim. Right. But for basically fair market value of your house, of your property. Right. And what happens if you go through that procedure, and the court awards you some number that's ridiculously low—$30 for maybe a $500,000 beach house. What claim do you have then? What federal claim would we have then? Do you have a federal claim? Yes, we have a federal claim. What is the federal claim? The federal claim that they've taken our land by— I know that, but you've been paid for it. Oh, you're saying if we've been paid—if we've been paid a low—we would have an appeal on the basis of an incorrect judgment on the valuation. I said what federal claim would you have? I said what federal claim would you have? Well, if North Carolina law is— You could appeal that through state courts on the state law on eminent domain. Right. And we could do that. The problem is that we can't go to state court on the inverse condemnation clause. I didn't ask you that now. I said—this is just curiosity I'm asking. If you went through that procedure and you came up with some ridiculously low number, would there be a federal takings claim left in the case? There very possibly would be. If the North Carolina law was different in any respect from federal law, then you would still have a federal claim, and you would be able to relitigate that. You wouldn't be precluded unless it was identical possibly in every single respect, then you might be precluded on the claim. In other words, then the federal claim would just be a relitigation of the fair market value? No, it'd be a relitigation of the merits of the claim, and then you'd—so I guess there might be a possibility you'd have issue preclusion on damages. Yeah, I just want— But that's a state law issue. Preclusion is state law, and I'm not familiar completely with preclusion. What I do know right now is that we're in federal court because you can't dismiss a damages claim under Burford abstention, so it stayed. So as it stands now, that's where the inverse condemnation claim is. Our federal claim is out in limbo, and we can't go to state or federal court. So we're going to lose all rights. I'm going to stop right there. Thank you very much. Thank you very much. Step down, Greek Council, and go to the last case for the day.
judges: Dennis W. Shedd, Andre M. Davis, Albert Diaz